IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MERCEDES CAPENER<br><br>    Plaintiff,<br><br>v.<br><br>JANET NAPOLITANO,<br>*Secretary of Department of Homeland Security*, et al.,<br><br>    Defendants. | REPORT AND RECOMMENDATION<br><br>Case No. 2:11-cv-00601-DN-DBP<br><br>District Judge David Nuffer<br><br>Magistrate Judge Dustin B. Pead |

## I.   INTRODUCTION

This matter was referred to the Court under 28 U.S.C. § 636(b)(1)(B).  (Docket No. 28.)

Plaintiff is Mercedes Capener, a Spanish citizen.  Defendants are: (1) Janet Napolitano,

Department of Homeland Security ("DHS") Secretary; (2) Alejandro Mayorkas, United States

Citizenship and Immigration Services ("USCIS") Director; (3) Gerard Heinauer, USCIS

Nebraska Service Center Director; and (4) Jeanne Kent, USCIS Salt Lake Field Office Director.

On June 8, 2012, Plaintiff filed an amended complaint.  (Dkt. No. 22.)[1]  She alleges

Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), when

they unlawfully denied her application to adjustment status to a lawful permanent resident based

---

[1] United States District Judge David Nuffer granted Defendants' motion to dismiss Plaintiff's original complaint as it related to claims made under 5 U.S.C. §§ 706(1), and 706(2)(C)-(D). (Dkt. No. 21.)  However, District Judge Nuffer granted Plaintiff leave to file an amended complaint as it related to her 5 U.S.C. § 706(2)(A) claim.  (*Id.*)

on their erroneous legal conclusion that she violated the immigration laws by falsely claiming U.S. citizenship. (*Id.* at 9.)

5 U.S.C. § 706(2)(A) permits a reviewing court to "hold unlawful and set aside agency action" that the court deems "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." Accordingly, Plaintiff asks the Court to declare that Defendants' denial was unlawful, to set aside the denial, and to remand the matter to USCIS with instructions to grant Plaintiff's adjustment application. (Dkt. No. 22 at 10-11.) She also asks the Court for injunctive relief compelling Defendants to grant her application. (*Id.* at 10.)

This Court considers Plaintiff's amended complaint (*id.*), and the parties' corresponding briefs (Dkt. Nos. 26-27; 29; 34-35; 38).[2] For the reasons set forth below, this Court **RECOMMENDS** the District Court **FIND** subject matter jurisdiction over Plaintiff's amended complaint. This Court further **RECOMMENDS** the District Court **AFFIRM** Defendants' decision to deny Plaintiff's adjustment application. This Court also **RECOMMENDS** the District Court **DENY** Plaintiff's request for injunctive relief.

## II. FACTUAL BACKGROUND

The parties do not dispute the facts involved in this case. (Dkt. Nos. 27 at 5; 29 at 1.) On March 30, 1999, Plaintiff was lawfully admitted to the United States under the Visa Waiver Program ("VWP"). (Dkt. No. 22, Ex. D.) The VWP allows people from designated countries to

---

[2] On August 17, 2012, Defendants filed a brief/answer to Plaintiff's amended complaint. (Dkt. No. 26.) On September 6, 2012, Plaintiff filed a reply to Defendants' brief. (Dkt. No. 27.) On September 20, 2012, Defendants filed a response thereto. (Dkt. No. 29.) On November 21, 2012, this Court ordered the parties to provide supplemental briefing on a jurisdictional issue. (Dkt. Nos. 31-32.) On December 21, 2012, the parties filed their supplemental briefs. (Dkt. Nos. 34-35.) On April 25, 2013, the Court ordered Plaintiff to provide supplemental briefing on another jurisdictional issue. (Dkt. No. 37.) On May 10, 2013, Plaintiff filed her supplemental brief. (Dkt. No. 38.)

visit the United States for up to ninety days without obtaining a visa.  8 U.S.C. § 1187.  Plaintiff remained in the U.S. beyond her ninety day authorized stay.

On July 12, 2000, a Utah Driver License Division ("DLD") employee called police because Plaintiff "came into the DL[D] with documents that belonged to another person to try to get ID." (Dkt. No. 25-1 at 15.)  Plaintiff gave the DLD employee a U.S. birth certificate and social security card that belonged to a person named N.D.  (*Id.*)  When police confronted Plaintiff with the fact that "the documents" were "not hers," she gave officers her real name, and said "she used these documents to try to get ID to get a better job."  (*Id.*)

On July 19, 2000, Plaintiff pled in abeyance to a class C misdemeanor violation of Utah Code Ann. § 76-8-511 for falsifying or altering government records.  (Dkt. No. 25-1 at 6-9.)  On June 26, 2001, the state court dismissed the charge, presumably because Plaintiff complied with the plea in abeyance conditions.  (*Id.* at 9.)

On March 23, 2001, Plaintiff married a United States citizen ("USC").  (Dkt. No. 22, Ex. E.) Marrying a USC entitled Plaintiff to apply to adjust her status to a lawful permanent resident. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1255(a).  As such, on December 27, 2006, Plaintiff filed an adjustment application to become a lawful permanent resident.  (Dkt. Nos. 22, Ex. A; 25-1 at 58-61.)

To adjust status to a lawful permanent resident, an alien must be admissible.  8 U.S.C. § 1255(a).  Relevant here, 8 U.S.C. § 1182(a)(6)(C)(ii)(I) renders inadmissible "[a]ny alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this chapter . . . or any other Federal or State law . . . ."

On October 15, 2007, Defendants denied Plaintiff's adjustment application because they found her inadmissible under 8 U.S.C. § 1182(a)(6)(C)(ii)(I).[3] (Dkt. No. 25-1 at 2-3, 58.) Defendants did not specify whether Plaintiff made a false USC claim for a purpose, benefit, or both. Instead, Defendants supported the denial by referencing Plaintiff's arrest, and subsequent conviction "for trying to obtain ID by presenting another person's U.S. Birth Certificate at" the Utah "Driver[] License Division." (*Id.* at 3.) Defendants advised Plaintiff to depart the United States within sixty days, "or be subject to removal proceedings." (*Id.*) However, to date, Defendants have not placed Plaintiff in removal proceedings, or ordered her removed. (Dkt. No. 26 at 14.)

### III. SUBJECT MATTER JURISDICTION

Plaintiff argues this Court maintains subject matter jurisdiction over her amended complaint under the following statutes: (1) 28 U.S.C. § 1651 ("All Writs Act"); (2) 28 U.S.C. § 2201 ("Declaratory Judgment Act"); (3) 5 U.S.C. § 701, *et seq.* (APA); and (4) 28 U.S.C. § 1331, which pertains to federal question jurisdiction.[4] (Dkt. No. 22 at 5.)

Defendants express concerns about this Court's jurisdiction, but refuse to formally argue against jurisdiction. (Dkt. No. 34 at 12 n.5.) Notwithstanding Defendants' refusal, "[f]ederal courts must determine that they have jurisdiction before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439 (2007). For the reasons described below, this Court **RECOMMENDS** the District Court **FIND** it has subject matter jurisdiction over Plaintiff's amended complaint.

---

[3] In the denial, Defendants refer to 8 U.S.C. § 1182(a)(6)(C)(ii)(I) as Immigration and Nationality Act ("INA") § 212(a)(6)(C)(ii). (Dkt. No. 25-1 at 3.)

[4] 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

### A. Federal Question Jurisdiction Permits Plaintiff to Bring APA Complaint in Federal District Court, Assuming no Other Judicial Review Limits Apply

Initially, the Court notes neither the All Writs Act, nor the Declaratory Judgment Act confer jurisdiction. *United States v. Denedo*, 556 U.S. 904, 913 (2009); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950). Similarly, "the APA does not create an independent grant of jurisdiction for the review of agency actions." *Fostvedt v. United States*, 978 F.2d 1201, 1203 (10th Cir. 1992). *See also Califano v. Sanders,* 430 U.S. 99, 105 (1997). Instead, a petitioner requesting review under the APA "must identify a jurisdictional grant from . . . one of the general jurisdictional provisions under Title 28 of the United States Code." *Hamilton v. Gonzales*, 485 F.3d 564, 569 (10th Cir. 2007).

Here, Plaintiff identified 28 U.S.C. § 1331 federal question jurisdiction in conjunction with her APA review request. (Dkt. No. 22 at 5.) *See O'Neill v. Cook*, 828 F. Supp. 2d 731, 736-37 (D. Del. 2011) ("The APA operates in conjunction with 28 U.S.C. § 1331 . . . creating a presumption of federal question jurisdiction over agency actions.") (internal quotations omitted). Therefore, absent other judicial review limits, Plaintiff may rely on 28 U.S.C. § 1331 to bring her APA action in federal district court. *See Hamilton*, 485 F.3d at 569 (indicating that 28 U.S.C. § 1331 "confer[s] original jurisdiction over challenges to agency actions to the district courts," and noting "that challenges to agency action under the INA seeking APA review must be filed in the appropriate district court . . . .").

### B. Other Judicial Review Limits at 5 U.S.C. § 701(a) and 8 U.S.C. § 1252(a)(2)(B)(i) do not Apply to Plaintiff's Amended Complaint

Notwithstanding 28 U.S.C. § 1331, the APA prevents petitioners from challenging agency decisions where other "statutes preclude judicial review," or where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Potentially preclusive here, the immigration

statute at 8 U.S.C. § 1252(a)(2)(B)(i) prohibits federal courts from exercising jurisdiction over agency decisions pertaining to adjustment applications.  However, in the Tenth Circuit Court of Appeals, 8 U.S.C. § 1252(a)(2)(B)(i) does "not prohibit review of what are essentially *non-discretionary* determinations."  *Marrakchi v. Napolitano*, No. 10-1527, 2012 WL 3570723, at *3 (10th Cir. Aug. 21, 2012) (unpublished) (emphasis added).  *See also Barrera-Quintero v. Holder*, 699 F.3d 1239, 1243 (10th Cir. 2012) (holding the same).

Here, Plaintiff and Defendants both acknowledge that Defendants denied Plaintiff's adjustment application for statutory eligibility reasons, rather than discretionary reasons.  (Dkt. Nos. 27 at 17; 34 at 3, 6.)  Indeed, Plaintiff notes "the only issue before this Court [is] whether [Plaintiff] made a false claim to U.S. citizenship for a purpose or benefit . . . ."  (Dkt. No. 27 at 18.)  Therefore, neither 5 U.S.C. § 701(a) nor 8 U.S.C. § 1252(a)(2)(B)(i) limit this federal district court's right to review Plaintiff's non-discretionary adjustment denial.

**C.  Other Judicial Review Limits Related to VWP Immigration Provisions Potentially Apply, but This Court Refrains From Applying Them**

Defendants suggest the Court may lack subject matter jurisdiction because, by entering through the VWP, Plaintiff waived any right to subsequently contest her inadmissibility or potential removal.  (Dkt. No. 34 at 12 n.5.)  *See Lacey v. Gonzales*, 499 F.3d 514, 518 (6th Cir. 2007) ("That an alien participating in the VWP is *not entitled to judicial review* is even more obvious when . . . the alien has violated the terms of his visa waiver by remaining in the United States after the expiration of his authorized stay.") (emphasis added).

This Court shares Defendants' concerns based on the Tenth Circuit's analysis in *Ferry v. Gonzales*, 457 F.3d 1117 (10th Cir. 2006).  However, despite its concerns, the Court still believes it maintains subject matter jurisdiction over Plaintiff's amended complaint.

USCIS exercises jurisdiction to adjudicate most adjustment applications. 8 C.F.R. § 245.2(a)(1). "No appeal lies from" USCIS's decision to deny an alien's adjustment application. 8 C.F.R. § 1245.2(a)(5)(ii). Rather than appeal an adjustment denial in court, 8 C.F.R. § 1245.2(a)(5)(ii) instructs aliens to renew their adjustment applications in removal proceedings. However, VWP entrants are not entitled to removal proceedings. *See* 8 U.S.C. § 1187(b)(2) (stating that, to enter under the VWP, an alien must waive the right "to contest" removal, "other than on the basis of an" asylum application). *See also Schmitt v. Maurer*, 451 F.3d 1092, 1095-96 (10th Cir. 2006) ("Under the [VWP], removal of aliens who are not seeking asylum shall be effected without referral of the alien to an immigration judge . . . .") (internal quotations omitted).

In *Ferry*, the Tenth Circuit interpreted the aforementioned statutes and regulations to hold that a VWP entrant who "files for an adjustment of status after he has overstayed, but before the issuance of a removal order, has waived his right to contest a subsequent removal order through a renewed application for adjustment of status, *or to otherwise seek review of the previously filed adjustment of status*." 457 F.3d at 1128 (emphasis added).

Facially, the statutes, regulations, and case law above suggest that VWP entrants like Plaintiff cannot ask any court to review their adjustment denials. Indeed, in *Ferry*, the Tenth Circuit questioned whether 8 C.F.R. § 1245.2(a)(5)(ii) precluded its jurisdiction to review "DHS's denial of" the VWP entrant's adjustment application as "arbitrary and capricious." *Id.* at 1123 n.11. However, the Tenth Circuit refrained from deciding this issue.

Absent definitive guidance on the issue, this Court believes the aforementioned statutes, regulations, and case law do not preclude it from exercising subject matter jurisdiction over Plaintiff's amended complaint. In other words, where a VWP entrant challenges USCIS's non-

discretionary adjustment denial under the APA, 5 U.S.C. § 706(2)(A), a federal district court retains subject matter jurisdiction to review this challenge.

The Court finds support for its position in analogous case law regarding arriving aliens.[5] Similar to VWP entrants, arriving aliens cannot appeal adjustment denials, and most cannot seek to adjust status in removal proceedings. *See* 8 C.F.R. § 1245.2(a)(1), 1245.2(a)(5)(ii). Nevertheless, several circuit courts permit such arriving aliens to challenge their adjustment denials in federal district court. *See Mamigonian v. Biggs*, 710 F.3d 936, 938-39, 945 (9th Cir. 2013) (concluding that an arriving alien could bring APA challenge in federal district court regarding USCIS's decision to deny her adjustment application); *Uddin v. Dir. of Bureau of Citizenship & Immigration*, No. 10-1801, 2011 WL 2745925, at *2-3 (3d Cir. July 15, 2011) (unpublished) (noting the same). Given the parallels between VWP entrants and arriving aliens, the Court believes these persuasive cases bolster subject matter jurisdiction over Plaintiff's amended complaint.

## IV. STANDARD OF REVIEW FOR APA COMPLAINTS

Finding subject matter jurisdiction, the Court now considers the standard of review it must employ on Plaintiff's amended complaint. Under the APA, a federal court functions as an appellate court when reviewing agency actions. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994). The court presumes regularity in an agency's decision. *Id.* at 1574.

Here, Plaintiff tries to rebut the presumption of regularity this Court gives Defendants' decision to deny her adjustment application. Plaintiff argues Defendants' denial violated the APA, 5 U.S.C. § 706(2)(A), because Defendants based their denial on the erroneous legal

---

[5] "The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry . . . ." 8 C.F.R. § 1001.1(q).

conclusion that Plaintiff was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(ii)(I). (Dkt. No. 22 at 2, 9.) As such, Plaintiff asks this Court to set aside Defendants' denial as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A).

When deciding whether an agency's decision violates 5 U.S.C. § 706(2)(A), the reviewing court "must determine whether the agency considered the relevant data and rationally explained its decision." *Ariz. Pub. Serv. Co. v. U.S. EPA*, 562 F.3d 1116, 1122 (10th Cir. 2009). *See also Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004) ("Even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned.") (internal quotations omitted).[6]

The reviewing court should only set aside agency action under 5 U.S.C. § 706(2)(A) if:

> [T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Ariz. Pub. Serv. Co.*, 562 F.3d at 1123 (citation omitted). The reviewing court may also set aside agency action as arbitrary if the agency failed to follow its own precedent. *See Galvez-Vergara v. Gonzales*, 484 F.3d 798, 802-03 (5th Cir. 2007).

---

[6] In making its decision, the reviewing court "cannot substitute its judgment for that of the agency." *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1164 (10th Cir. 2002). For instance, the reviewing court should not "supply a reasoned basis for the agency's action that the agency itself has not given," or rely on "[a]fter-the-fact rationalization by counsel in briefs or argument . . . ." *Olenhouse*, 42 F.3d at 1574-75 (citation omitted). Indeed, the reviewing court may affirm agency action "only on the grounds articulated by the agency itself." *Id.* at 1565.

## V. ANALYSIS: DEFENDANTS DID NOT VIOLATE 5 U.S.C. § 706(2)(A) WHEN THEY FOUND PLAINTIFF INADMISSIBLE UNDER 8 U.S.C. § 1182(a)(6)(C)(ii)(I)

Applying the aforementioned deferential review standard, the Court concludes Defendants did not violate the APA, 5 U.S.C. § 706(2)(A), when they found Plaintiff inadmissible under 8 U.S.C. § 1182(a)(6)(C)(ii)(I). As such, this Court **RECOMMENDS** the District Court **AFFIRM** Defendants' decision to deny Plaintiff's adjustment application.

### A. Inadmissibility Requirements Under 8 U.S.C. § 1182(a)(6)(C)(ii)(I)

Inadmissibility under 8 U.S.C. § 1182(a)(6)(C)(ii)(I) includes two distinct prongs. The first prong requires a false USC claim. 8 U.S.C. § 1182(a)(6)(C)(ii)(I). The second prong requires an alien to make this false claim "for any purpose or benefit under" the INA, "or any other Federal or State law . . . ." *Id.*

### B. Defendants did not Violate 5 U.S.C. § 706(2)(A) When They Concluded Plaintiff Made False USC Claim Under 8 U.S.C. § 1182(a)(6)(C)(ii)(I)'s First Prong

Plaintiff argues that Defendants erred when they found her inadmissible under 8 U.S.C. § 1182(a)(6)(C)(ii)(I)'s first prong because she never made a false USC claim as defined by the INA. (Dkt. Nos. 27 at 13-14; 35 at 19-20.) At the time Plaintiff tried to obtain her identification card at the Utah DLD, Utah law did not require proof of USC status for such cards. *See* Utah Code Ann. § 53-3-804 (2000) (amended 2009). Therefore, Plaintiff argues she presented a false U.S. birth certificate to the Utah DLD simply "for the purpose of establishing an identity as required by Utah [l]aw in effect at that time." (Dkt. No. 27 at 14.)[7]

---

[7] Plaintiff could have presumably established her identity by using her true Spanish birth record. In 2000, Utah Code Ann. § 53-3-804(2) only required an applicant for an identification card to present the following information:

> (a) true and full legal name and address;

Despite Plaintiff's argument, a U.S. birth certificate, by its nature, constitutes evidence of USC status. *See, e.g.*, 22 C.F.R. § 51.42(a) (specifying that a U.S. birth certificate serves as primary evidence of birth in the U.S. for passport eligibility). Therefore, Defendants did not violate 5 U.S.C. § 706(2)(A) when they rationally concluded that Plaintiff made a false USC claim "by presenting another person's U.S. Birth certificate" at the Utah DLD. (Dkt. No. 25-1 at 3.) *See Ponce v. Ashcroft*, No. 02-9557, 2004 WL 848600, at *2 (10th Cir. Apr. 21, 2004) (unpublished) (sustaining alien's inadmissibility under 8 U.S.C. § 1182(a)(6)(C)(ii) where alien admitted being a Mexican citizen, and admitted presenting a false Colorado birth certificate to obtain a U.S. passport).

### C. Defendants did not Violate 5 U.S.C. § 706(2)(A) When They Failed to Recognize Materiality Requirement in 8 U.S.C. § 1182(a)(6)(C)(ii)(I)'s Second Prong

To reiterate, 8 U.S.C. § 1182(a)(6)(C)(ii)(I)'s second prong requires an alien to make a false USC claim for "any purpose or benefit under" the INA, "or any other Federal or State law . . . ." Plaintiff asserts that Defendants erred when they found her inadmissible under 8 U.S.C. § 1182(a)(6)(C)(ii)(I)'s second prong because they "failed to recognize" that the statute's second prong contains a "materiality requirement . . . ." (Dkt. No. 27 at 6.)

---

(b) date of birth as set forth in a certified copy of the applicant's birth certificate, or other satisfactory evidence of birth, which shall be attached to the application;
(c) Social Security number or temporary identification number (ITIN) issued by the Internal Revenue Service for a person who does not qualify for a Social Security number;
(d) place of birth;
(e) height and weight;
(f) color of eyes and hair;
(g) signature;
(h) photograph; and
(i) organ donor indication, if desired.

Specifically, Plaintiff argues that an alien only triggers 8 U.S.C. § 1182(a)(6)(C)(ii)(I)'s second prong when the alien makes a false USC claim "for the purpose of receiving a benefit for which U.S. citizenship is required." (Dkt. No. 27 at 11.) Because Utah law did not require USC status for an identification card when Plaintiff tried to obtain one, Plaintiff claims she did not present a U.S. birth certificate to the Utah DLD for either a purpose or benefit. (*Id.* at 13.)

Initially, the Court notes that 8 U.S.C. § 1182(a)(6)(C)(ii)(I)'s plain text does not suggest a materiality requirement. The text lacks "modifying language indicating that the purpose or benefit" sought under state law "must be linked to the alien's immigration status." (Dkt. No. 34 at 16.) Rather, the statute simply requires a false USC claim for "any" purpose or benefit under state law.

Additionally, the circuit cases Plaintiff cites for support do not stand for the unequivocal proposition that U.S. citizenship must be central to the purpose or benefit sought under 8 U.S.C. § 1182(a)(6)(C)(ii)(I). *See Castro v. Att'y Gen. of the United States*, 671 F.3d 356 (3d Cir. 2012); *Hassan v. Holder*, 604 F.3d 915 (6th Cir. 2010). In *Castro*, the Third Circuit Court of Appeals found an alien who falsely told police he was born in Puerto Rico did not do so for a purpose or benefit because the "police department had no authority to confer a legal benefit on [the alien] by virtue of his citizenship status." 671 F.3d at 370-71. The court limited its ruling "to the facts of record" in that case, and cautioned that its ruling did "not purport to lay down an exhaustive interpretation of the circumstances to which 8 U.S.C. § 1182(a)(6)(C)(ii) might apply." *Id.* at 371.

In *Hassan*, the Sixth Circuit Court of Appeals refrained from finding an alien removable for making a false USC claim on a loan application because the DHS "offered no evidence of the 'purpose or benefit'" behind the alien's false USC claim. 604 F.3d at 928. In other words, the

Sixth Circuit "based" its decision "on the lack of evidence presented," rather than on substantive grounds. *Richmond v. Holder*, 714 F.3d 725, 729 (2d Cir. 2013). Moreover, the court surmised that, "notwithstanding the lack of *effect*" the alien's false USC claim had on a loan application for which "immigration status was irrelevant," the alien could have been removable if his "purpose" when he made the false USC claim "was to *affect* his application . . . ." 604 F.3d at 929 (emphasis added).[8]

Given 8 U.S.C. § 1182(a)(6)(C)(ii)(I)'s plain text, as well as *Castro* and *Hassan's* limited holdings, the Court concludes Defendants did not violate 5 U.S.C. § 706(2)(A) when they ignored an alleged materiality requirement in 8 U.S.C. § 1182(a)(6)(C)(ii)(I)'s benefit or purpose prong. Instead, Defendants articulated a rational connection between their decision to find Plaintiff inadmissible, and the undisputed fact that Plaintiff was "trying to obtain ID by presenting another person's U.S. Birth Certificate at" the Utah DLD. (Dkt. No. 25-1 at 3.) *See Estevez v. Att'y Gen. of the United States*, No. 07-1125, 2009 WL 130220, at *1 (3d Cir. Jan. 21, 2009) (unpublished) (finding inadmissibility under 8 U.S.C. § 1182(a)(6)(C)(ii) sufficiently established where alien presented someone else's U.S. birth certificate to New Jersey Department of Motor Vehicles "to obtain a state benefit, an identification card . . . .").

---

[8] To further support her argument, Plaintiff cites to several unpublished decisions from the Board of Immigration Appeals ("BIA") that allude to a materiality requirement. (Dkt. No. 27 at 8-9.) However, these citations do not show that Defendants violated 5 U.S.C. § 706(2)(A) where other unpublished BIA decisions blatantly reject a materiality requirement. *See* Wilton Reynoso, A76 182 387, 2004 WL 2374544 (BIA July 30, 2004) (unpublished) (finding "materiality requirement . . . does not apply to charges under" 8 U.S.C. § 1182(a)(6)(C)(ii)(I), and emphasizing that false USC claim may render an alien inadmissible if the alien "making the representation seeks thereby to achieve some purpose or to obtain some benefit under law. . . . [I]t is no defense to inadmissibility that the same purpose could have been achieved, or the same benefit obtained, by lawful means.")

## VI. INJUNCTIVE RELIEF

Based on the analysis above, this Court believes Defendants did not violate 5 U.S.C. § 706(2)(A). In other words, Plaintiff cannot show she will succeed on the merits of her claim against Defendants. As such, this Court **RECOMMENDS** the District Court **DENY** Plaintiff's request for injunctive relief. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (finding that, to warrant a preliminary injunction, a party must show, among other things "that he is likely to succeed on the merits . . . ."); *Crandall v. City & Cnty. of Denver, Colo.*, 594 F.3d 1231, 1235-36 (10th Cir. 2010) (finding that, to warrant a permanent injunction, a party must demonstrate "actual success on the merits . . . .").

## VII. RECOMMENDATIONS

For the reasons set forth above, this Court **RECOMMENDS** that the District Court:

**FIND** it has subject matter jurisdiction over Plaintiff's amended complaint. (Dkt. No. 22.)

**AFFIRM** Defendants' decision to deny Plaintiff's adjustment application because Defendants did not violate 5 U.S.C. § 706(2)(A).

**DENY** Plaintiff's request for injunctive relief. (Dkt. No. 22.)

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 16th day of October, 2013.

By the Court:

Dustin B. Pead
United States Magistrate Judge